UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

KAREN RENEE SUDDUTH

        Plaintiff,

v.

**A13CV0918 SS**

Civil Action Number

TEXAS HEALTH AND HUMAN
SERVICES COMMISSION

TINA PHAM

DIAMOND MENDOZA

GARY GOSSETT

SANDRA COCHRAN

        Defendants,

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Karen Renee Sudduth, *pro se*, and her complaint against the defendants, Texas Health and Human Services Commission, et al hereby states as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964 (42 USC §§ 2000e et seq.) and The Americans With Disabilities Act (42 USC §§ 12102 et seq.)(ADA).

2. This Court has jurisdiction pursuant to the following statutes:

3. 28 U.S.C. §1331, which gives the district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States; and

1

4. 28 U.S.C. §1367, which gives this court supplemental jurisdiction over state law claims.

5. Venue is appropriate in this judicial district under 28 U.S.C. §1391(b) because the events that gave rise to this Complaint occurred in this district.

## PARTIES

6. Plaintiff, Karen Renee Sudduth, is a citizen of the United States and resides in the Parish of Calcasieu, State of Louisiana.

7. Defendants, Texas Health and Human Services Commission, Tina Pham, Diamond Mendoza, Gary Gossett and Sandra Cochran have their business or offices located at 4000 South IH35, 7th FL, Austin, Texas, 78704 or 10205 North Lamar, Austin Texas, 78753. The defendants at their office located at 10205 North Lamar, Austin, Texas, 78753, employed plaintiff. At all relevant times of claim of discrimination, Defendant employed 100 plus employees.

## GENERAL ALLEGATIONS

8. Defendant discriminated against plaintiff in the manner indicated in paragraph 8 of this complaint beginning and ending dates of such acts are August 1, 2011 thru July 31, 2012

9. Plaintiff filed charges against the defendant with the Equal Employment Opportunity Commission (E.E.O.C.) charging defendant with the acts of discrimination indicated in paragraph 7 of this complaint on or about May 13, 2013.

10. The E.E.O.C. issued a Notice of Right to Sue, which was received by plaintiff on July 20, 2013.

11. The E.E.O.C issued a Determination in this case.

2

12. Plaintiff alleges that because of her race as an American Indian:

13. Race as an American Indian, and

14. Disability, namely, the fact that she is blind in her right eye, has limited vision in left eye and has only 20 degree peripheral vision with advanced development of cataract, and is under medical care for Diabetes Mellitus, Diabetic Neuropathy, Diabetic Retinopathy, and Hashimoto's disease.

15. The Defendant terminated plaintiff's employment, Harassed the plaintiff, and Intentionally withheld access to Plaintiff's ADA approved equipment and withheld access to enlarged prints of policies, procedures and work requirements.

16. The Defendant prevented plaintiff from seeking assistance from co-workers and required plaintiff to work in an unsafe environment given plaintiff's visual limitations,

17. The Defendant subjected plaintiff to continued harassment due to plaintiff's required medical monitoring of glucose levels at work,

18. The Defendant continually and intentionally harassed plaintiff when plaintiff requested time for ongoing and necessary medical evaluations by plaintiff's numerous physicians,

19. The Defendant submitted altered and thus fraudulent documents to the Texas Workforce Commission which ultimately resulted in plaintiff's awarded unemployment benefits being terminated.

## SPECIFIC ALLEGATIONS

20. Plaintiff on or about August 1, 2011 provided Defendant an assessment from DARS (Division for Blind Services) regarding Plaintiff's visual limitations and needs. Defendant made Plaintiff very uncomfortable regarding this information through repeated sighs and sounds of exasperation in front of Plaintiff.

3

21. Defendant on or about August 2, 2011 required Plaintiff to sign an HHSC acknowledgment by new employees pre-dated to August 1, 2011.  Plaintiff told Defendant that she could not read the document and thus she did not want to sign anything.  Defendant insisted she sign and stated, "it does not matter, just sign them or else I will get in trouble".

22. Defendant on or about September 15, 2011 made the following comment: "Don't make Indians mad, if you don't give them Medicaid, Indians will scalp you." following an office meeting regarding intake polices and procedures for new applicants. Plaintiff told both her immediate supervisor and management that the comments were offensive to her, only to be told, "You are white, you do not look Indian."  No further action was taken regarding Plaintiff's complaint.

23. Defendant on or about October 18, 2011 issued a memorandum that Plaintiff meets the definition of a qualified individual with a disability according to policy based on the Americans with Disabilities Act of 1990, as amended, which lead to Plaintiff's fight for the approved equipment, the Defendant's refusal to allow Plaintiff to request help from co-workers, and ultimately to the Plaintiff's specific request that she, "please be treated like everyone else."

24. Defendant on or about January 2012 moved Plaintiff to a new work area with inadequate lighting and a structural pole in her workspace. Plaintiff could not see due to her limited peripheral vision.  Plaintiff repeatedly advised Defendant of the hazard the pole presented, including that there were other available workspaces without a support pole in the work area.  After numerous requests by Plaintiff to be moved it was not until she was going to report the issue to civil rights that she was finally moved.

25. Plaintiff during the course of her employment beginning on July 25, 2011 and ending on July 31, 2012 was required to obtain a doctors excuse for each and every doctors visit she went on even though none of her co-workers were required to do so. HHSC policy states only if an individual misses three consecutive days due to medical reasons, then the individual has to provide substantiating documentation.

26. Defendant on or about July 31, 2012 notified Plaintiff that she had been terminated due to a workplace incident on July 13, 2011. Defendant alleges that the termination of Plaintiff was for workplace violence due to threatening statements made by Plaintiff. However, Plaintiff re-asserts complaint that this action by Defendant was wrongful termination for several reasons. First, the evidence will prove that a Ms. Salina Carter was the aggressor and not the Plaintiff. Second, the alleged threatening statement was never actually heard by anyone in the office.

27. Defendant denied Plaintiff her rights, as propounded in HHSC's own policies, to have a witness present with her during questioning about the incident.

28. Defendant intentionally destroyed her personal files kept at her desk and deleted e-mails from the company server from various co-workers and supervisors which would collaborate Plaintiffs allegations of workplace harassment and that the alleged incident of July 13, 2012 was just a façade to terminate Plaintiff's employment.

## WITNESSES

29. Dr. Simone Scampi. He will testify to Plaintiff's care for Diabetes Mellitus and Diabetic Neuropathy.

30. Dr. Joe Nguyen. He will testify to Plaintiff's care for general health issues and Hashimoto's disease.

31. Dr. Armatage Harper. He will testify to Plaintiff's care for Diabetic Retinopathy, cataracts, retina detachment issues and numerous eye laser surgeries.

32. Jon A. Yokubatis, MD. He will testify to Plaintiff's care for Diabetic Retinopathy, and numerous laser surgeries.

33. Tatsuo Hirose, MD, He will testify to Plaintiff's retina detachment and specialized medical eye care.

34. Yvonne Johnson. Her testimony will show that Karen's files were being marked for shredding and two HHSC employees were in another Plaintiff's supervisor's office on the weekend doing things on their computer which was highly unusual and not within normal protocol. Also, she will testify that Plaintiff had asked her to be her witness during the questioning of the alleged July 13, 2013 incident and she will provide testimony in regards to the alleged July 13, 2012 incident. Further, she will testify that on the date of Plaintiff's dismissal that a co-worker for defendant came into her office and stated "I am pissed, Linda used me to do this to Karen, I was told it was over. I don't trust anybody in this situation" then they physically pointed to a specific employee for the Defendant's office.

35. Cleve Tolvar. His testimony will show that Plaintiff had contacted him to determine if Plaintiff was allowed to have a witness present with her during questioning regarding the alleged July 13th incident.

36. Shanicca Cruse. HHSC employee who was present in co-workers office during alleged July 13, 2012 incident and whose testimony will support Plaintiff's position she was not the aggressor during the alleged incident.

37. Salina Carter. Her testimony will support Plaintiff's claim that she was not the aggressor during the alleged July 13, 2012 incident and that Ms. Carter in fact has admitted to being

at fault for any misunderstanding that took place and never felt threatened at anytime. Additionally, she voluntarily went to her supervisor of Defendant to tell her what happened, whereby no statement was taken or asked for and was only told by defendant "you know how I feel about Karen."

38. Gina Crosby. Her testimony will support Plaintiff's claim that she was unable to complete required training sessions due to no accommodations being provided for her visual impairment. Additionally, she informed Plaintiff's supervisor of this matter.

39. Gary Gossett. His testimony will show that no action was taken or concerns reported to HHSC Employee's Assistance Program for workplace incidents that require further evaluation. Additionally, no action was taken against either party to the alleged incident of July 13, 2012 until July 26, 2012. This was after Plaintiff was told that no further action would be forthcoming relative to the July 13, 2012 incident.

40. Tina Pham. Witness will be called to testify as to the Department's (HHSC) zero tolerance policy. Witness will also be called upon to testify regarding statements made during the TWC Unemployment Benefit Hearing for Plaintiff.

41. David Miars. His testimony will support Plaintiff's claim for qualification and assistance under the American Disabilities Act.

42. Cheryl Robinson. Her testimony will support Plaintiff's claim that her personal files had been submitted for shredding and were not available for her any longer. Additionally, she told Plaintiff that as far as the alleged incident on July 13, 2012, "it was over and it was not even going to HR."

43. Nadine Walton. Her testimony will show that Plaintiff was awarded unemployment benefits and that the incident of July 13, 2012 was a non-factor.

44. Scotty Crippin. His testimony will corroborate the information that was provided to him for review in order to make a determination relative to unemployment benefits for the Plaintiff upon appeal by employer, HHSC.

## DOCUMENTATION

45. Health and Human Services Enterprise – Acknowledgment by New Employees. This document will show that Plaintiff had right to request HR policies in hard copy and that said policies would be made available.

46. Health and Human Services Enterprise – Reasonable Accommodation request. It will show that Plaintiff requested accommodations on August 2, 2011 due to visual impairment and that the assessment from the Division of Blind Services was submitted on August 1, 2011.

47. Memorandum dated October 18, 2011. It will show that Plaintiff was awarded reasonable accommodations by Texas Health and Human Services Commission.

48. E-mail dated October 27, 2011. It will show that Plaintiff was concerned about the way she was being treated and was making a request to please treat her as all of co-workers at HHSC.

49. E-mail dated August 10, 2011. It will show that Plaintiff was excused from training due to the fact she required special accommodations for her sight. Further, it was denoted that no training would be provided Plaintiff until appropriate accommodations had been made available.

50. Health and Human Services Enterprise – Employee Development Notes. It will show that the entry dated on July 5, 2012 obtained through an open records request was deleted from the same form when it was submitted to the appeals hearing

officer for Texas Workforce commission, thereby effectively denying Plaintiff's unemployment benefits previously awarded.

51. Personnel record of Plaintiff. It will rebut statements made by employees of Defendant.

52. Personnel record of Salina Carter. It will rebut statements made by employees of Defendant.

53. Statement of Plaintiff. It will rebut statements made by employees of Defendant.

54. Statement dated 10/5/2012 by Salina Carter. It will rebut statements made by employees of Defendant.

55. Statement dated 10/22/2012 by Salina Carter. It will rebut statements made by employees of Defendant.

56. Phone message left by Salina Carter. It will rebut statements made by employees of Defendant.

57. Text messages sent by Salina Carter. It will rebut statements made by employees of Defendant.

58. Notes from an interview of Shanicca Cruse regarding alleged incident on July 13, 2012. It will refute the testimony handpicked by Defendant and substantiate testimony of Plaintiff.

59. Statement of Sandra Cochran. It will show that her account of the alleged incident on July 13, 2012 was based on conversation with Plaintiff and is not substantiated by other co-workers statements or the statement of the Plaintiff.

60. Statements of Yvonne Johnson dated July 30, 2012 and July 31, 2012 regarding alleged incident on July 13, 2012. It will substantiate testimony of Plaintiff and it will rebut statements made by employees of Defendant.

61. Examination under oath of Yvonne Johnson dated February 11, 2013. It will substantiate Plaintiff's claim that Defendant destroyed documents concerning her.

62. Notes from meeting held on July 30, 2012 by Defendant. It will show that Plaintiff was already considered terminated as of July 26, 2012 despite having only received a notice of possible disciplinary action. Additionally, Plaintiff requested to have a witness present with her during the rebuttal meeting and her request was denied, thereby violating her right to have a witness present with her.

63. Texas Workforce Commission benefits –non-monetary determinations – Fact Finding. It will substantiate Plaintiff's original statement of the alleged incident on July 13, 2012.

64. Texas Workforce Commission employer response to notice of application for UI benefits. It will show that Defendant has not accurately portrayed the facts relative to the alleged incident of July 13, 2012.

65. Texas Workforce Commission issue decision log. It will show that statements do not agree and employer did not meet burden of proof. Further it states that last incident was not misconduct and thereby not disqualified.

66. Transcript of Texas Workforce telephone hearings. It will show that Defendant does not have a zero tolerance policy in regards to workplace violence and that the Plaintiff was denied the right to fully present her evidence. Additionally, it will show that Defendant represented to hearing officer that Plaintiff had been

disciplined before for exhibiting the type of behavior of the alleged incident on July 13, 2012, which is refuted by the evidence of Plaintiff's personnel file.

67. Transcript of Appeals hearing on February 21, 2013 before Judge Keith Grantham. It will show that Plaintiff was denied a continuance, thereby resulting in Plaintiff's withdrawal of her grievance statement in open court.

68. Manual of Health and Human Services Human Resources policies and procedures. It will show that Defendant did not follow the policies and procedures relative to the alleged incident on July 13, 2012.

69. The above acts or omissions set forth in paragraphs 20 thru 28 are no longer being committed by defendant.

70. Defendant discriminated against plaintiff in the manner indicated in paragraphs 20 thru 28 of this complaint beginning and ending dates of such acts are August 1, 2011 thru July 31, 2012.

## DEMAND FOR JURY TRIAL

71. Plaintiff hereby requests a jury trial on all issues raised in this complaint.

## CONCLUSION

WHEREFORE, plaintiff prays that the Court grant the following relief to the plaintiff:

Compensatory damages in whatever amount in excess of $ 5,000,000.00, exclusive of costs and interest, that Plaintiff is found to be entitled;

Punitive/exemplary damages against the Defendants in whatever amount, exclusive of costs and interest, that Plaintiff is found to be entitled;

An order placing Plaintiff in the position that she would have been in had there been no violation of her rights;

An order enjoining/restraining the Defendants from further acts of discrimination or retaliation;

An award of interest, costs, and reasonable attorney's fees;

Any and all other remedies provided pursuant to 42 U.S.C. §1983 and 42 U.S.C. §12102 (ADA);

Take other appropriate non-discriminatory measures to overcome the above described discrimination; and

Such other and further relief as the court deems appropriate.

I declare under penalty of perjury that the foregoing is true and correct.

October 17, 2013
Date

Signature of Plaintiff

2144 Wildflower Drive
Address of Plaintiff

| Lake Charles | LA | 70607 |
|---|---|---|
| City | State | Zip Code |

(512) 779-0444 or (337) 480-0101
Telephone Numbers